ANN HARTNETT & another *vs.* BOSTON HOUSING AUTHORITY.

Suffolk. April 3, 1963. — June 7, 1963.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Landlord and Tenant,* Landlord's liability to tenant or one having his rights, Common area. *Proximate Cause.*

Evidence, that the landlord of an apartment building was in control of a common, asphalt surfaced play yard thereof and a common stairway leading down from the yard to the basement of the building, that a child of a tenant in the building, while running in the yard, tripped on a broken place in the asphalt and fell into the well of the stairway through an open pipe fence affixed to a curbing along the top of the well, and that a heavy wire fence had been attached to the pipe fence at the beginning of the tenancy of the child's parent but had been removed by the landlord's employees some weeks before the accident and had not been replaced, warranted findings that there was a breach of the landlord's duty to the child with respect to the wire fence and that the breach was a proximate cause of the accident.

TORT. Writ in the Superior Court dated June 26, 1959. The action was tried before *Spring,* J.

*Timothy J. Murphy* for the plaintiffs.

*Sturtevant Burr* (*Andrew F. Lane* with him) for the defendant.

KIRK, J. This is an action of tort based on negligence. Ann Hartnett seeks compensation for personal injuries sustained on October 22, 1958, when she was four years old, as the result of a fall into an outside stair well at the defendant's apartment building in Charlestown. Ann's father, the tenant, seeks consequential damages. The plaintiffs' exceptions to the allowance of the defendant's motion for directed verdicts and to certain rulings during the trial bring the case to us.

The case was referred to an auditor, findings not final, who found for the defendant. At the trial there was evidence which contradicted the subsidiary facts found by the auditor.

We observe the usual standard of review. *Morton* v. *Dobson,* 307 Mass. 394, 396. *Adams* v. *Herbert,* 345 Mass. 588, and cases cited. We summarize the evidence from whatever source it comes in the light most favorable to the plaintiffs. *Howes* v. *Kelman,* 326 Mass. 696, 697. Since 1953, Ann's parents have been tenants of the defendant in the same apartment building under a lease renewed in June of each year. The lease last executed prior to the accident was dated June 1, 1958, for a term of one month with provision for automatic renewal for successive months. In the rear of the building the defendant maintained a court yard and play area with an asphalt surface for the use of the tenants' children. It also maintained a common stair well which gave access from the play area to the basement of the adjoining building where a perambulator room was located. The horizontal long dimension of the stair well, approximately eighteen feet, was parallel to the side of the building which served as the inner wall of the well. The stair well was approximately five feet wide, and six feet deep at its lowest level. The steps themselves were only sixteen inches wide, because on each side of the steps within the well there was a cement skid for use in getting baby carriages to or from the perambulator room. The stair well was of cement. A cement curbing projected approximately ten inches above the level of the asphalt surface along the long and short dimensions of the well. An open metal fence of steel pipe enclosed the stair well on the long side away from the building and on the short side opposite the head of the steps. It may be described as follows. Footings of upright metal pipe or tubing were imbedded in the curbing. Between these uprights there were three horizontal pipes forming an enclosure of two of the three exposed sides of the stair well. The lowest horizontal bar appears to be eight inches above the curbing; the middle bar about fifteen inches above the lowest; and the top bar about eighteen inches above the middle one. At the commencement of the original tenancy and on June 1, 1958, a heavy duty metal wire fence (apparently of the chain link

type) was attached to the steel tubing or pipes. On or about June 17, 1958, this heavy wire fence was deliberately torn loose from the steel pipe enclosure by some young men. The minor plaintiff's mother informed the defendant's maintenance men of this fact. In September, 1958, the defendant's maintenance men removed the heavy duty wire mesh fence entirely. It had not been restored at the time of the accident. Benches and swings had been in the area. Ann and fifty or sixty children played there.

On the day of the accident, when Ann was running in the yard, she was called by her older sister. She tripped on the broken surface of the asphalt and fell through the open space between two of the horizontal bars to the bottom of the stair well.

We think there was a case for the jury. The duty of a landlord as to that part of the premises retained in his control for the use of his tenants and of those using the premises in his tenants' right need not be restated. *McDonald* v. *Yogel*, 329 Mass. 492, 494. Whether the defendant failed seasonably to replace the heavy duty wire fence and thereby failed in its duty to the plaintiffs was a question of fact for the jury. *Peckham* v. *Capitol Springfield Realty Co. Inc.* 331 Mass. 736, 737. The defendant contends, however, that the absence of the heavy wire fence, if proved, was not causally related to Ann's injury and that recovery should be denied. The argument runs: Since the cause of Ann's fall was her tripping on the broken surface of the asphalt, and since there was no evidence that there was a change in the condition of the surface of the asphalt from the time the tenancy began, the injury is not the result of the negligence of the defendant. The fallacy of the argument is in the omission of one essential consideration. It was the province of the jury to say whether the purpose of the heavy duty wire fence was to prevent children while at play, including the normal incidents of play such as stumbling or tripping, from falling into the stair well. If that was its purpose the negligent failure to restore it would be sufficient to establish the causal connection between such

failure and the consequences which its installation was designed to prevent. It is not necessary to render the defendant liable that it should have been able to foresee the precise manner in which the accident happened. It is enough if injury to children playing in the area was reasonably to be apprehended as a result of the defendant's failure to restore the fence. That was a question for the jury. See *Lord* v. *Lowell Inst. for Sav.* 304 Mass. 212, 215, and cases cited.

To whatever extent *Farrell* v. *B. F. Sturtevant Co.* 194 Mass. 431, 434, is inconsistent with what we have said here, we are not disposed to follow it.

It is unnecessary to consider the other exceptions of the plaintiffs.

*Exceptions sustained.*